**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NICHOLAS THOMAS KELLY,

      Petitioner,

                                 CASE NO. 2:10-CV-14280
v.                              HONORABLE LAWRENCE P. ZATKOFF
                                 UNITED STATES DISTRICT JUDGE

MITCH PERRY,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Nicholas Thomas Kelly, ("Petitioner"), confined at the Lakeland Correctional Facility in

Coldwater, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.C.L.A.

750.317.  For the reasons stated below, the petition for writ of habeas corpus is  DENIED.

### I.  Background

      Petitioner was convicted of the above offense following a jury trial in the St. Clair County

Circuit Court.  Petitioner has provided a detailed statement of facts in his petition for writ of habeas

corpus.  Respondent has likewise provided a detailed factual summary of the case, which does not

essentially conflict with petitioner's statement of facts.  The Court will therefore accept the factual

allegations contained within the habeas petition insofar as they are consistent with the record,

because the respondent has not disputed them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th

Cir. 2008).  Because the facts of this case have been repeated numerous times, they need not be

repeated here in their entirety.  Therefore, only a brief overview of the facts is required. *See Nevers*

*v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).  Accordingly, this Court will recite verbatim

the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir.

2009):

> Holli Sharrow, defendant's girlfriend, died on December 12, 2006. Sharrow died
> from blunt force trauma to her head, which had created a subdural hematoma.
> According to Dr. Kanu Virani, the medical examiner, the hematoma had been present
> in Sharrow's brain for two to three weeks prior to her death.
>
> Two weeks before her death, on November 30, 2006, Sharrow was interviewed by
> Detective Colleen Titus.  Sharrow told Titus that, on November 25, 2006, defendant
> had thrown her against a wall, causing her head to hit the wall.  Sharrow also told
> numerous medical providers that defendant had assaulted her, with her head striking
> a wall.
>
> *********************************************************************
> In the course of receiving medical treatment, Sharrow provided statements to five
> medical providers about the cause of her brain injury.  She told Dr. David Michael
> and Dr. Robert Brandt that her boyfriend had assaulted her.  She informed Dr. Meena
> Hierholzer and Dr. Mark Adams that her boyfriend had thrown her against a wall,
> causing her head to strike the wall.  She told Dr. David Charles that her boyfriend
> had taken her by her head or hair and beat her head against a wall multiple times.
> In addition, Dr. Virani testified that the hematoma in Sharrow's brain was consistent
> with Sharrow's head being slammed into a wall two or three weeks before her death.
> Dr. Virani further testified that a "directly large amount of force" was necessary to
> cause the hematoma.
>
> *People v. Kelly,* No. 279068, * 1, 3-4 (Mich.Ct.App. March 24, 2009).

Petitioner's conviction was affirmed on appeal. *Id. lv. den.* 485 Mich. 974, 774 N.W.2d

901 (2009).  Additional facts will be discussed when addressing petitioner's claims.  Petitioner

seeks habeas relief on the following grounds:

> I. Did the trial court deny defendant's state and federal constitutional right to
> confrontation when it admitted prior testimonial statements of unavailable witness
> Holli Sharrow, and did the court of appeals clearly err in finding the error harmless?
>
> II. Was the defendant denied his state and federal constitutional right to due process

when the trial court denied defense counsel's request for an instruction on involuntary manslaughter?

III. Was the defendant denied a fair trial by way of prosecutorial misconduct where the prosecution appealed to the jury's sympathy, injected issues broader than guilt or innocence, vouched for the credibility of witnesses, appealed to the jury's civic duty, and shifted the burden of proof?

IV. Was the defendant denied a fair trial where over objection, the trial judge abused its discretion by allowing autopsy photos to be admitted into evidence, and shown to the jury where the photographs had no probative value and were unduly prejudicial?

V. Was defendant's conviction for second degree murder not legally supported by sufficient evidence presented at trial to support that defendant's actions caused the injuries which eventually caused the death as the prosecution did not satisfy the elements beyond a reasonable doubt?

VI. Was the defendant denied an impartial jury where the trial court, prosecution, and defense counsel agreed to not have the jury upon their request be provided transcripts of a witness testimony or in the alternative the testimony re-read from the record?

VII. Was the defendant denied the effective assistance where counsel failed to: (A) object to numerous offending commentary made by the prosecuting attorney as more fully argued in Issue III; (B) agreed to stipulate to the denial of allowing the jury to not have the opportunity to have testimony re-read or transcript provided as more fully argued in Issue VI; and (C) subject the prosecution's case to a meaningful adversarial challenge.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of

3

the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotations omitted). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### III.  Discussion

**A.  Claim # 1.  The Confrontation Clause claim.**

Petitioner first claims that his right to confrontation was violated when the trial court admitted the victim's statements to police officers with regards to prior assaults by petitioner in 2003, 2004, 2005, and 2006, as well as statement made by the victim to Detective Colleen Titus

regarding the offense for which petitioner was convicted.

The Michigan Court of Appeals agreed that with one exception, the admission of these statements by the victim violated petitioner's right to confrontation. *Kelly,* Slip. Op. at * 2-3. [1] The Michigan Court of Appeals concluded, however, that the admission of this evidence was harmless error, in light of the statements made by the victim to five different medical providers during the course of her medical treatment, which established that petitioner assaulted her and that this assault caused her brain injury which ultimately lead to her death, as well as testimony from the medical examiner which suggested that the hematoma in the victim's brain was consistent with her head being slammed into a wall two or three weeks prior to her death and that a "directly large amount of force" was needed to cause this hematoma. *Id.,* at * 3-4.

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength

---

[1] The Michigan Court of Appeals concluded that a statement made by the victim to Lieutenant James Wagester on December 9, 2006, in which she told Lieutenant Wagester that the pain in her head was the result of an assault by petitioner, did not violate his right to confrontation, because it was a nontestimonial statement made to enable Wagester to render emergency medical assistance. *Id.* at * 3

5

of the prosecution's case." *See Jensen v. Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner has failed to show that the admission of the victim's hearsay statements had a substantial and injurious effect or influence on the verdict.  The victim told five different doctors during the course of her treatment that petitioner had assaulted her.  The victim's testimony was admissible under the medical treatment exception to the hearsay rule found in M.R.E. 803(4).  The victim told two of these doctors that petitioner had thrown her against a wall, which had caused her head to strike the wall.  The victim told another doctor that petitioner had taken her by her head or hair and beaten her head against a wall multiple times.  The victim's statements were corroborated by the medical examiner, Dr. Virani, who testified that the hematoma in the victim's brain was consistent with her head being slammed into a wall two or three weeks prior to her death.  Dr. Virani further testified that a "directly large amount of force" was necessary to cause the hematoma.

Moreover, in addition to the victim's testimony to her five doctors, numerous witnesses testified at trial that petitioner was angry at the victim and assaulted her several times on the night of November 25, 2006.  One witness, Stephanie Alden, saw petitioner grab the victim's hair as she left the apartment. (Tr. 5/11/2007, pp. 698-99).  The day after the assault, several witnesses noted that the victim had a black eye.  When Detective Titus interviewed the victim on November 30, 2006, she noticed that there were places on either temple of the victim's head where the hair had been pulled out.  The victim also showed her a dark bruise behind her right ear and had other bruises on her body.  When Detective Titus inspected the victim's apartment, she found damage on the east wall and on the bathroom door.  When she inspected the hole in the east wall, Detective

6

Titus discovered blond hair that was embedded in the bottom of the hole that was consistent with the victim's hair.  Upon further inspection of the wall, Detective Titus noticed that layers of drywall had been fractured. (Tr. 5/9/2007, pp. 259-62, 268, 278).  Finally, Lieutenant Wagester testified that on December 9, 2006, he was dispatched to the victim's residence to give medical assistance.  When he arrived at the victim's apartment, the victim was holding her head and screaming.  The victim told Lieutenant Wagester that her head injury was a result of petitioner assaulting her. (Tr. 5/10/2007, pp. 397-99).  As the Michigan Court of Appeals indicated, the admission of this testimony did not violate petitioner's right to confrontation, inasmuch as the primary purpose of the victim's statement to Lieutenant Wagester was to enable him to assist with an ongoing emergency, namely, the victim's medical condition. *See e.g. Davis v. Washington*, 547 U.S. 813, 822 (2006).

The erroneous admission of the victim's hearsay statements to the various police officers does not warrant federal habeas relief, because the error did not have an injurious effect on the fundamental fairness of the trial, where there was ample evidence besides these statements upon which to base petitioner's second-degree murder conviction, and the verdict would not have been different had the statements been excluded. *See Ford v. Curtis,* 277 F. 3d 806, 810 (6th Cir. 2002).

In his traverse to respondent's answer, petitioner for the first time argues that the admission of the victim's statements to her doctors during the course of their diagnosis and treatment of her head injury violated his right to confrontation.

Petitioner is not entitled to habeas relief for three reasons.  First, a traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).

7

"[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.* Because petitioner's claim that the admission of the victim's statements to the doctors violated his right to confrontation is being presented for the first time in petitioner's traverse, this claim is not properly before this Court. *See Murphy v. Ohio*, 551 F. 3d 485, 502 (6th Cir. 2009).

Secondly, petitioner never claimed on his direct appeal that the admission of the victim's statements to the doctors violated his right to confrontation. For purposes of federal habeas review, exhaustion requires that a claim raised in a habeas petition must be presented to the state courts under the same theory in which it is later presented in federal court. *See Williams v. Bagley,* 380 F. 3d 932, 969 (6th Cir. 2004). A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim in the state courts. *See Hicks v. Straub,* 377 F. 3d 538, 552 (6th Cir. 2004). Although petitioner raised a Confrontation Clause claim on direct appeal involving the victim's statements to various police officers, petitioner did not argue on direct appeal that the admission of the victim's statements to her doctors violated his right to confrontation. Because the factual basis of this Confrontation Clause claim was never presented to the state courts, it has not been properly exhausted with the state courts. *See e.g. Vasquez v. Jones,* 496 F. 3d 564, 568-69 (6th Cir. 2007).

Finally, assuming that petitioner had properly exhausted this Confrontation Clause claim, it is nonetheless without merit. Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when

8

non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. at 823-26.  In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.*  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S. at 51).

In *Giles v. California,* 554 U.S. 353, 376 (2008), the Supreme Court suggested, albeit in dicta, that statements made by the victims of domestic abuse to their physicians in the course of receiving medical treatment did not qualify as testimonial statements that would be excluded by the Confrontation Clause.  Courts have held that out-of-court statements made by victims to their doctors are non-testimonial when they are made for the purpose of diagnosis and treatment, rather than to inculpate the defendant. *See Moses v. Payne,* 555 F.3d 742, 755 (9th Cir. 2009); *see also U.S. v. Santos,* 589 F.3d 759, 763 (5th Cir. 2009) (statements made for the purposes of obtaining medical treatment during an ongoing emergency are not testimonial for Confrontation Clause purposes); *United States v. Peneaux,* 432 F. 3d 882, 896 (8th Cir. 2005) (where statements are made to a physician seeking to give medical aid in the form of diagnosis or treatment, they are presumptively nontestimonial for purpose of a Confrontation Clause claim).

In the present case, the victim made her statements to her doctors during the course of being diagnosed for her head injury or seeking medical treatment.  As such, these statements were non-testimonial and their admission at petitioner's trial did not violate the Confrontation Clause.

9

Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The jury instruction claim.

In his second claim, petitioner contends that the trial court erred in refusing to instruct the jurors on the lesser included offense of involuntary manslaughter.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing *to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)).  Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.   Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002) (State trial court's failure to give lesser-included instruction on involuntary manslaughter in noncapital first-degree murder trial was not basis for federal habeas relief).  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The prosecutorial misconduct claims.

In his third claim, petitioner contends that he was deprived of a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial misconduct will form the

basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, the Supreme Court has clearly indicated that the state courts should be given a great amount of discretion when adjudicating prosecutorial misconduct claims "because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).

Petitioner first contends that the prosecutor shifted the burden of proof when she stated "[a] young woman 21 years old in an abusive relationship, she felt she had no choice. Now, the reasons for that, I can't prove to you beyond a reasonable doubt and I don't have to . . . ." (Tr. Tr. 5/15/2007, p. 823).

The prosecutor's remarks did not shift the burden of proof because the reasons why the victim remained in an abusive relationship were not elements of the crime of second-degree murder that had to be proven beyond a reasonable doubt. Moreover, the trial court instructed the jury that petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt. (Tr. 5/15/2007, p. 867-68). The prosecution's argument did not deprive petitioner of a fair trial, because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott*

*v. Elo,* 302 F. 3d at 603-04.

Petitioner next contends that the prosecutor improperly appealed to the sympathy of the jury by referring in her opening argument to the victim's upcoming birthday and her future age.

To the extent that the prosecutor's remarks during opening argument may have improperly evoked sympathy for the murder victim, they would not warrant federal habeas relief, in light of the fact that the remarks were relatively isolated, and the trial judge informed the jury at the end of the trial that the arguments were not evidence (Tr. 5/15/2007, p. 869). *Byrd v. Collins,* 209 F. 3d 486, 532-33 (6th Cir. 2000). Finally, petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (Tr. 5/15/2007, p. 866). *See Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner lastly claims that the prosecutor improperly vouched for the prosecution witnesses and made an improper civic duty argument. Petitioner does not give any specific examples of vouching or an improper civic duty argument made by the prosecutor. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Because this prosecutorial misconduct claim is conclusory or unsupported, petitioner is not entitled to habeas relief. Petitioner is not entitled to habeas relief on his third claim.

**D. Claim # 4. The claim involving the admission of the autopsy photographs.**

Petitioner next alleges that he was deprived of a fair trial by the admission of autopsy photographs of the victim which he claims were unduly prejudicial.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable

as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.*" Kelly v. Withrow*, 25 F. 3d 363, 370 (6ᵗʰ Cir. 1994).  Petitioner's claim that the trial court admitted unduly prejudicial photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See Cooey v. Coyle,* 289 F. 3d 882, 893-94 (6ᵗʰ Cir. 2002) (internal citation omitted).

### E. Claim # 5.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence to convict him of second-degree murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's

13

resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010) (citing *People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980)). Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123; 631 N.W.2d 67 (2001)).

Petitioner contends that there was insufficient evidence to support a finding that he caused the injury that lead to the victim's death. Petitioner argues that because the victim told Dr. Hierholzer that the left side of her head hit the wall when petitioner assaulted her, this assault could not have caused the victim's death because the medical examiner testified that the victim's brain injury was caused by an impact to the right side of her head. Petitioner further argues that because the victim fainted at work on November 27, 2006, she probably fell when she did so, thus, the injury that caused her death most likely occurred when she passed out and fell. The Michigan

14

Court of Appeals rejected petitioner's claim:

> Although there was some inconsistent testimony about which side of Sharrow's head hit a wall, it was for the jury to determine whether this inconsistency was material. Likewise, it was for the jury to determine whether this inconsistent testimony, along with the fact that Sharrow passed out on November 27, 2006, provided an inference that Sharrow's brain injury was the result of a fall after she passed out. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." We will not interfere with the jury's role in determining the weight of the evidence. Viewing Sharrow's statements to her medical providers and the testimony of Dr. Virani in the light most favorable to the prosecution, there was sufficient evidence from which the jury could have concluded that the elements of second-degree murder were proven beyond a reasonable doubt.

*Kelly,* Slip. Op. at * 6-7 (internal citations omitted).

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326). Although there was some inconsistent testimony concerning which side of the victim's head hit the wall and whether the victim passed out at work two days after the assault and hit her head, this Court must presume that the jurors resolved such conflicting evidence in favor of the prosecution and determined that petitioner's assault upon the victim caused her death. The victim told five different doctors that petitioner had assaulted her. The victim informed two of these doctors that petitioner had thrown her against a wall, which had caused her head to strike the wall. The victim told another doctor that petitioner had taken her by her head or hair and beaten her head against a wall multiple times. The victim's statements were corroborated by the medical examiner, Dr. Virani, who testified that the hematoma in the victim's brain was consistent

with her head being slammed into a wall two or three weeks prior to her death.  Dr. Virani further testified that the "cue and contra cue injuries," which included the hematoma, suffered by the victim required a force sufficient to cause the brain to move inside of the victim's skull.  Dr. Virani described this force as a "good force" or a "directly large amount of force."   Detective Titus testified that when she interviewed the victim she observed "hair . . . like broken off and bare spots" near her temples.  The victim was also observed by Titus and her supervisor, John Greer, with having a black left eye and bruise behind her ear. *See Kelly,* Slip. Op. at 3-4.  A rational trier of fact could have reasonably concluded that petitioner's assault upon the victim was the cause of her death.  Moreover, because of the degree of force needed to cause the victim's injuries to her head, the jury could have reasonably inferred that petitioner acted with malice, so as to support his second-degree murder conviction. *See People v. Lange*, 251 Mich.App. 247, 251; 650 N.W.2d 691 (2002).

Petitioner is not entitled to habeas relief because the Michigan Court of Appeals' determination that there was sufficient evidence for a rational trier of fact to conclude that petitioner's assault was the cause of the victim's death was not an unreasonable application of *Jackson* or an unreasonable determination of the facts. *Cavazos,* 132 S. Ct. at 6-7.

### F. Claim # 6.  The claim involving the trial judge's failure to provide the jurors with transcripts of the witnesses' testimony.

In his sixth claim, petitioner argues that he was denied a fair trial when the judge failed to read back the testimony of several witnesses or provide the jury with the transcripts.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed.Appx. 468, 477 (6th Cir. 2006).  The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses

16

or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley,* 192 Fed. Appx. at 477.

### G. Claim # 7. The ineffective assistance of trial counsel claims.

Petitioner lastly alleges that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant

17

has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*

Petitioner first contends that his trial counsel failed to subject the prosecutor's case to a meaningful adversarial challenge.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(quoting *United States v. Cronic,* 466 U.S. 648, 659 (1984)).  However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

In the present case, counsel's alleged errors did not rise to the level of a constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F. 3d at 860-62. Prior to trial, counsel filed a motion to quash the information based upon the introduction of hearsay statements at petitioner's preliminary examination. (Tr. 4/2/2007, pp. 3-11).  Counsel subsequently objected to the prosecutor's attempts to introduce the victim's hearsay statements to the police involving petitioner's prior assaults against her and the current assault. (Tr. 5/7/2007, pp. 4-6).  At trial, petitioner's counsel participated in voir dire and jury selection (Tr. 5/8/2007, pp. 108-29, 130, 139-42, 147-48, 153-55, 171-75), gave an opening statement (*Id.* at pp. 200-05), cross-examined the witnesses (*Id.* at pp. 222-27, Tr. 5/9/2007, pp. 243-45, 286-307, 321-26, 336-37, 347-

18

50, 360-61, 363, 370-71, 383-84, Tr. 5/10/2007, pp. 399-400, 407-12, 414-15, 419-20, 429-31, 452-55, 468-69, 508-29, 533-34, 545-49, 556-58; Tr. 5/11/2007, pp. 568-70, 582-85, 614-29, 630-31, 644-48, 668-77, 681-82, 704-10, 719-20, 736-39, 740-41, 756-62, Tr. 5/15/2007, pp. 798-804, 809-10), requested a jury instruction on the lesser offense of involuntary manslaughter, (Tr. 5/15/2007, pp. 816-21), and made a closing argument. (*Id.* at pp. 847-61).

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697). In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner next contends that his trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complains of in his third claim. Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.

Petitioner next contends that trial counsel was ineffective for failing to call Shawna Mumby as a witness, claiming that Mumby would have presented testimony that the victim was physically violent toward petitioner. The Michigan Court of Appeals rejected petitioner's claim, because, although petitioner presented that court with an affidavit from Mumby, this affidavit was not part of the lower court record, and thus, the Michigan Court of Appeals would not consider it. *Kelly,* Slip. Op. at * 8. Because the record did not contain a summary of Mumby's testimony, the

Michigan Court of Appeals concluded that petitioner had failed to show that counsel's failure to call Mumby deprived him of a substantial defense. *Id.*

Assuming that counsel was deficient in failing to call Mumby as a witness, petitioner is unable to show that he was prejudiced by this failure because Mumby's testimony concerning the victim's alleged violence towards petitioner would have been cumulative of evidence presented at trial which established that the victim had assaulted or hit petitioner several times on the night in question. (Tr. 5/9/2007, pp. 317-24; Tr. 5/10/2007, pp. 484-87, Tr. 5/11/2007, pp. 599-601, 691-93); *See e.g. Allen v. Howes,* 438 Fed.Appx. 432, 435 (6th Cir. 2011)(appellate counsel's failure to challenge trial court's exclusion of evidence of murder victim's past violence did not prejudice defendant, as required to establish ineffective assistance because excluded evidence was cumulative of other evidence admitted at trial).

Petitioner finally contends that trial counsel was ineffective for agreeing with the trial court's decision to deny the jurors' requests for transcripts of the witnesses' statements and his instruction that they instead rely on their collective memories.

*Strickland* states that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In the present case, petitioner's ineffective assistance of counsel claim fails, because trial counsel, as a matter of strategy, may have preferred that the jury not re-hear these witnesses' testimony. *See Bradley,* 192 Fed. Appx. at 477. Moreover, petitioner is unable to show that there would have been a different outcome in the trial had counsel objected to the judge's ruling. *Id.* Petitioner is not entitled to relief on his seventh claim.

20

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn,* 718 F. Supp. 2d at 854.  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.**

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 20, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 20, 2012.


S/Marie E. Verlinde
Case Manager
(810) 984-3290

22